THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICARDO JACKSON, | : |
| Plaintiff, | : |
| v. | : 3:13-CV-2747 |
| | : (JUDGE MARIANI) |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On November 11, 2013, Plaintiff filed a Complaint, (Doc. 1), in response to his termination as a corrections officer. On January 16, 2014, Plaintiff amended his Complaint. (Doc. 11). The Amended Complaint contains a single count alleging that the Commonwealth of Pennsylvania Department of Corrections ("DOC") violated the Civil Rights Act of 1964—specifically 42 U.S.C. § 2000e-2(a)—by terminating Plaintiff's employment on the basis of his race. (Doc. 11, ¶¶ 20, 29-31). After numerous extensions and delays, fact discovery was completed on January 21, 2016. Defendant then filed a Motion for Summary Judgment, (Doc. 33), on March 4, 2016. The Motion has been fully briefed and is now ripe for decision. For the reasons set forth below the Court will deny Defendant's Motion.

## II. STATEMENT OF UNDISPUTED FACTS

In accordance with Local Rule 56.1, Defendant submitted a Statement of Material Facts in Support of its Motion for Summary Judgment, (Doc. 38), as to which it contends that there is no genuine dispute for trial, and Plaintiff submitted a response, (Doc. 43). Thus, the following facts have been admitted, except as specifically noted:

Plaintiff, Ricardo Jackson, is an African American male who began working for the Defendant, Pennsylvania DOC, in November, 2008. (Doc. 38, ¶¶ 2, 5). On January 4, 2011, Plaintiff was scheduled to work the 2:00 p.m. to 10:00 p.m. shift at the State Correctional Institution at Dallas. (Id. at ¶¶ 1, 4). At that time, Sergeant Alfred DeAngelis was conducting random searches of staff vehicles arriving for work. (Id. at ¶ 1). When Plaintiff's vehicle was chosen for a search, he consented. (Id. at ¶¶ 9-10). The search of his vehicle uncovered a Smith and Wesson .40 handgun and ammunition. (Id. at ¶¶ 11-12). Upon further searching, DeAngelis found a residue in the vehicle's cup holder, two small pieces of paper containing plant material, and a one inch by one inch Ziploc bag. (Id. at ¶¶ 15, 17; Doc. 43, ¶¶ 15, 17). A "NIK" field test indicated the residue in the cup holder was marijuana.[1] (Doc. 38, ¶ 18). After consenting to a personal drug test, Plaintiff tested positive for marijuana. (Id. at ¶¶ 22-23).

---

[1] It appears from the record that the two pieces of paper with plant material were never tested. The baggie found in Plaintiff's vehicle was tested with "drug detection equipment" and tested positive for marijuana. (Doc. 38, ¶ 21). Plaintiff, however, contests these results on the basis that the individual who ran the test did not possess "sufficient knowledge of the technology" and could not testify as to "what could cause a false positive on the machine." (Doc. 42 at 12-13). Plaintiff further contests the scientific accuracy

2

On January 5, 2011, Plaintiff was suspended from his job while an internal investigation was conducted. (*Id.* at ¶ 24). Defendant also turned over the results of the vehicle search to the Pennsylvania State Police. (*Id.* at ¶ 25). As a result, Plaintiff was criminally charged with violating 35 P.S. § 780-113(a)(31)(i), possessing small amounts of marijuana for personal use, and 35 P.S. § 780-113(a)(32), possession with intent to use drug paraphernalia. (*Id.* at ¶ 26). Plaintiff was placed on "probation without verdict" after pleading guilty. (Doc. 43, ¶ 27; Doc. 45 at 8; Doc. 44-5); *see* 35 P.S. § 780-117.[2]

On April 19, 2011, a Pre-Disciplinary Conference was held to address what action should be taken with regards to Plaintiff's employment. (Doc. 38, ¶¶ 29-31; Doc. 44-4 at 2). After the Pre-Disciplinary Conference, Superintendent Jerome Walsh recommended terminating Plaintiff's employment with the DOC. (Doc. 38, ¶ 34). By letter dated May 27, 2011, Plaintiff was informed that he was dismissed from his job for violating the DOC Code of Ethics[3] and the Governor's Code of Conduct.[4] (*Id.* at ¶¶ 35-36). Plaintiff appealed his termination to the State Civil Service Commission, alleging both that the Defendant lacked cause to terminate and that Defendant had discriminated against Plaintiff on the basis of his

---

of the field test done on the residue. (*Id.* at 12). Thus, Plaintiff disputes the fact that any of the substances found in his car were definitively marijuana.

[2] Under 35 P.S. § 780-117, a "court may place a person on probation without verdict if the person pleads nolo contendere or guilty to [certain] nonviolent offense[s] . . . and the person proves he is drug dependent." "Upon fulfillment of the terms and conditions of probation, the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal shall be without adjudication of guilt and shall not constitute a conviction for any purpose whatever, including the penalties imposed for second or subsequent convictions." *Id.* at § 780-117(3).

[3] The DOC Code of Ethics prohibits employees from bringing both controlled substances and personal weapons onto state property without authorization. (Id. at ¶¶ 47-48).

[4] *See* 4 PA. CODE § 7.173.

3

race. (*Id.* at ¶ 37). The Commission determined that there was just cause for Plaintiff's dismissal and that Plaintiff had failed to present evidence establishing discrimination. (*Id.* at ¶ 38).

Around this time, several other incidents occurred. Plaintiff's sister alleged that two other employees, both white males, had engaged in work related misconduct. (*Id.* at ¶ 39). She alleged that Sergeant Provow smoked marijuana with Plaintiff and that Provow admitted to her that he carried a weapon on state property. (*Id.*). She also alleged that a corrections officer, Donahue, sold homemade wine on state property. (*Id.*). Upon investigation, both individuals denied the allegations and no further action was taken. (*Id.* at ¶¶ 40-42). Further, another white male, Rathburn, was found to have had a hunting knife while in one of the perimeter vehicles on DOC property.[5] (Doc. 45 at 10). Although it is clear that Rathburn was not immediately suspended, (Doc. 38-6 at 299-300), and that a Pre-Disciplinary Conference was held, (Doc. 38, ¶ 44), the record is unclear as to whether he was ultimately terminated or not, (Doc. 38-6 at 298-299).

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

---

[5] Although Defendant's Statement of Material Undisputed Facts state that Rathburn "was rumored to have brought a knife onto SCI-Dallas premises in a perimeter vehicle," (Doc. 38, ¶ 43), Defendant later stated unequivocally that "Mr. Rathburn had a hunting knife in his possession in a facility vehicle on a perimeter check." (Doc. 45 at 10).

4

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

Defendant argues that Plaintiff was discharged because he violated DOC policies by bringing a gun and marijuana onto DOC property and because he violated the Governor's Code of Conduct by being criminally charged with behavior related to his employment. (Doc. 39 at 11). Plaintiff counters that similar white employees were not fired for similar behaviors, that he was treated differently because of his race, and that all of the proffered reasons for his termination are pretexts for discrimination. (Doc. 42 at 2, 10, 20).

Title VII of the Civil Rights Act makes it unlawful for an employer to "discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93

S. Ct. 1817, 36 L. Ed. 2d 668 (1973), there are three stages in a Title VII disparate treatment claim. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). First, a plaintiff must establish a *prima facie* claim of discrimination. *Id.* Second, if the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to put forth a non-discriminatory reason for the employment action. *Id.* Finally, if the defendant puts forth a non-discriminatory reason, the plaintiff is given the opportunity to show that the defendant's stated reason is a pretext for discrimination. *Id.*

### A. *Prima Facie* Case

To make out a *prima facie* claim under Title VII, a plaintiff must demonstrate that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination." *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007) (citing *Jones*, 198 F.3d at 410-11). "If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the *prima facie* case, she has not met her initial burden, and summary judgment is properly granted for the defendant." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

Defendant does not take issue with the first three elements; it only argues that the fourth element is not met. (Doc. 39 at 8). Plaintiff argues that he has established the fourth element by showing that several white employees who broke or may have broken DOC

policies were treated more favorably then him.[6] (Doc. 42 at 9-10). Specifically, he points to two cases. First, Plaintiff points out Sergeant Provow and Corrections Officer Donahue as examples of Defendant performing minimal investigation in light of allegations of misconduct. (*Id.* at 9-10). Second, he points to another employee, Rathburn, who was found with a knife on DOC property and was not immediately suspended. (*Id.* at 10). Defendant counters that Plaintiff's conduct and the conduct of the three white employees are not comparable because the white employees' misconduct "did not rise to the significance, or to the shear [sic] amount of issues" as Plaintiff's misconduct. (Doc. 39 at 10).

"The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L.

---

[6] Plaintiff makes an additional argument that he has "establishe[d] a *prima facie* case for discrimination based on the search of the vehicles disproportionately affecting African American employees." (Doc. 42 at 7). The search on the day in question included eighteen cars, three belonging to black males, three belonging to white females, and twelve belonging to white males. (Doc. 38, ¶¶ 19-20). Using these numbers, Plaintiff performed a "statistical analysis" and concluded that on the day in question 16% of the individuals searched were black and 84% were white. (Doc. 42 at 8). Applying these numbers to the total number of employees on the shift, Plaintiff finds that "roughly thirty eight percent of all black individuals were searched while twenty one percent of all white employees were searched." (*Id.*). The Court finds this argument unpersuasive. While these numbers show that black employees were disproportionally impacted by the search, it does not give the Court the requisite information to determine if the search was random or not.

Assuming Plaintiff is correct and there were approximately eighty employees working that shift, only eight of whom were African American, (*Id.* at 7-8), a random selection of eighteen of those employees would, on average, consist of two black employees and sixteen white employees. While this Court does not rule out the possibility that the search was not random, the fact that one additional African American employee was searched over what would be expected *on average* if the search was random does not provide sufficient evidence that the search was not random. Given the nature of averages, a certain proportion of random searches would result in three black employees and sixteen white employees being searched, just as a certain proportion of random searches would result in one black employee and seventeen white employees being searched. *See generally* R. Lyman OTT & MICHAEL T. LONGNECKER, A FIRST COURSE IN STATISTICAL METHODS 182-99 (2004).

Ed. 2d 207 (1981); see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) ("[T]here is a low bar for establishing a prima facie case of employment discrimination."). "An individual plaintiff may establish a prima facie case by 'showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under' Title VII." Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1354, 191 L. Ed. 2d 279 (2015) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 576, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978)). The fourth element of a prima facie case may be made by a showing that "the employer has treated more favorably similarly situated persons not within the protected class." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998). This showing does not require, however, "that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways." Young, 135 S. Ct. at 1354. Similarity between comparators is generally a question of fact for a jury, but "summary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated." Abdul-Latif v. Cty. of Lancaster, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014).

Viewing the facts in the light most favorable to Plaintiff, he has met his burden of establishing a prima facie claim of discrimination. First, Plaintiff is a member of a protected class. Second, he was qualified for his job as a corrections officer, which he held for a number of years. Third, he was terminated from his job. As for the fourth element,

Defendant is correct that Plaintiff's misconduct does differ somewhat from the misconduct of the comparators. Plaintiff, however, does not need to present exact comparators to raise an inference of discriminatory intent. *See Young*, 135 S. Ct. at 1354.

Here, Plaintiff has put forth a comparator, employee Rathburn, who engaged in some of the same type of misconduct as Plaintiff did. Specifically, Rathburn, a white male, was found to have a hunting knife while in one of the perimeter vehicles on DOC property. (Doc. 38, ¶ 43; Doc. 45 at 10). The DOC code of ethics makes no distinction between knives and guns, but instead prohibits "[p]ersonal weapons" on DOC property. (Doc. 38, ¶ 48). Rathburn was not suspended for his alleged violation of the ethical rule. (Doc. 38-6 at 299-300). Plaintiff, however, was suspended after violating the same ethical rule, among others. (Doc. 38-3 at 49). While Plaintiff's case revolves around his termination, not his suspension, disparate treatment in the process of termination can be informative. Here, there is no indication that the decision to suspend Plaintiff and not to suspend Rathburn was guided by anything but the discretion of DOC management. For example, there is no evidence of any policy which states that employees who are being investigated for more than one violation shall be suspended pending investigation.

Nor is there any indication that Plaintiff was suspended for an immediate safety concern that was not present in Rathburn's case. Plaintiff was only suspended the day after the incident, not the day of the incident. (Doc. 38, ¶¶ 1, 24). Further, although Plaintiff's violation involved a gun while Rathburn's involved a knife, these two cases are not

distinguishable based upon the dangerousness of the weapon. There seemed to be little concern with Plaintiff's actual possession of the gun—as opposed to the fact that possession violated policy—as it was returned to him an hour after it was found. (Doc. 44 at 73-74). Thus, safety concerns cannot distinguish the two cases. Nor can a distinction be drawn on the basis of Plaintiff's criminal charges. There is no indication that the DOC management was aware that criminal charges would be filed at the time they made their suspension decision, or that the anticipation of criminal charges factored into their decision to suspend.[7] Finally, although a Pre-Disciplinary Conference was held for Rathburn, (Doc. 38, ¶ 44), it is unclear whether he was ultimately terminated or not, (Doc. 38-6 at 298-299). Thus, a factual dispute remains as to the employment status of one of the Plaintiff's comparators.

In sum, Plaintiff was suspended and ultimately terminated after multiple violations of the DOC ethical rules, while another white employee was not suspended and may not have been terminated when he violated one of the same DOC ethical rules as Plaintiff violated. Construing the evidence in the light most favorable to Plaintiff and recognizing the light burden Plaintiff faces at this stage, the Court concludes that the inconsistent treatment of Plaintiff and Rathburn is enough to raise an inference of discrimination. Thus, Plaintiff has established a *prima facie* case of race discrimination under Title VII.

---

[7] In fact, the record indicates that a criminal case was not initiated against Plaintiff until February 7, 2011, (Doc. 38-3 at 44), more than a month after Plaintiff was suspended from work.

## B. Non-Discriminatory Reason

After a plaintiff meets his initial burden under *McDonnell Douglas*, the burden of production shifts to the employer to establish a "legitimate, non-discriminatory reason for the adverse employment decision." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000). "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426 (internal quotation marks omitted). "At this stage, the defendant need not prove that the articulated reason actually motivated its conduct." *Id.* (internal quotation marks omitted).

Here, Defendant has satisfied its burden by putting forth non-discriminatory reasons for Plaintiff's dismissal. Specifically, Defendant proffers four reasons that the DOC terminated Plaintiff: (1) Plaintiff tested positive for having marijuana in his system; (2) Plaintiff violated the Governor's Code of Conduct when he was criminally charged with two misdemeanors related to the marijuana and marijuana paraphernalia found in his car; (3) Plaintiff had a gun and ammunition on state property in violation of the DOC Code of Ethics; and (4) Plaintiff possessed marijuana and drug paraphernalia in his car in violation of the DOC Code of Ethics. (Doc. 39 at 11). These four reasons are more than sufficient to satisfy Defendant's light burden at this stage.

## C. Pretext

Finally, if a defendant articulates a non-discriminatory reason for its actions, a "plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). To prevail, a plaintiff faces a "difficult burden"; specifically,

> the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

*Id.* at 765 (alteration original) (internal citations and quotation marks omitted). While the plaintiff ultimately bears the burden of proving discrimination by a preponderance of the evidence, at summary judgment the plaintiff "need only raise a genuine issue of fact as to whether the [defendant] in fact terminated him for [the proffered reasons]." *Wilcher v. Postmaster Gen.*, 441 Fed. App'x 879, 881 (3d Cir. 2011).

As mentioned above, Defendant maintains that Plaintiff was terminated based on the combination of four reasons. (Doc. 38 at 12). The Court will thus address each reason in turn. As to the first stated reason—that Plaintiff tested positive for having marijuana in his

13

system—Plaintiff argues that his termination letter does not state that his positive test result was a reason for his termination. (Doc. 42 at 19-20; Doc. 38-3 at 54). Defendant counters that the absence of that reason in the letter is irrelevant as the Superintendent was aware of the positive drug test when he made the decision to terminate Plaintiff's employment. (Doc. 45 at 12).

The termination letter lays out the accusations leveled at Plaintiff and then lists what the information presented at the Pre-Disciplinary Conference established. (Doc. 38-3 at 54). Although the letter lists the other three reasons Defendant now proffers, it does not state that the information at the Pre-Disciplinary Conference established that Plaintiff tested positive for marijuana or that the positive test result contributed to the decision to terminate Plaintiff's employment. (Id.). Superintendent Walsh seems to cite the positive drug test as a reason for termination for the first time at the State Civil Service Commission hearing on October 24, 2011. (Doc. 44 at 246). Yet, at that same hearing, the parties stipulated that the DOC Code of Ethics is not violated by an employee having "any amount of marijuana in his or her urine." (Doc. 44 at 250). Therefore, construing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that this justification for termination was a pretext for discrimination.[8] See Abramson v. William Paterson Coll. of N.J., 260 F.3d

---

[8] Further, there is a serious question as to whether a positive drug test alone would even be grounds for dismissal. The prison superintendent, Jerome Walsh, who was responsible for making the termination decision, testified that if "an employee would use [marijuana] off grounds and come in unfit for duty, yes, that would be reason for termination." (Doc. 44 at 328). Walsh, however, did not know if there was a policy allowing termination on the basis of a positive drug test alone, without evidence of the employee also being under the influence at work. (Id.). Further, Walsh admitted that Plaintiff's positive

14

265, 284 (3d Cir. 2001) ("If a plaintiff demonstrates that the reasons given for her termination did not remain consistent, beginning at the time they were proffered and continuing throughout the proceedings, this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record.").

The second proffered reason—that Plaintiff violated the Governor's Code of Conduct when he was criminally charged with two misdemeanors related to the marijuana and marijuana paraphernalia found in his car—requires examination of that Code. The pertinent section of the Governor's Code of Conduct states:

> As soon as practicable after an employe has been formally charged with criminal conduct related to his employment with the Commonwealth or which constitutes a felony, the employe shall be suspended without pay. If the charge results in conviction in a court of law, the employe shall be terminated.

Pa. Exec. Order No. 1980-18, Governor's Code of Conduct, Part III § 2, *codified as amended in* 4 PA. CODE § 7.173.

This provision provides for two separate courses of action. When a state employee has outstanding criminal charges related to his or her employment with the Commonwealth or criminal charges that amount to a felony, the Code of Conduct provides for suspension. It states that when an employee is "formally charged with criminal conduct related to his employment with the Commonwealth . . . the employe shall be suspended without pay." It goes on to say that "[i]f the charge *results in conviction* in a court of law, the employe shall

---

drug test gave the DOC no information about whether Plaintiff was under the influence of marijuana while he was at work. (*Id.* at 328-29).

15

be terminated." (emphasis added). Therefore, by its terms, the Code does not support termination unless criminal charges result in a conviction. *See Woods v. State Civil Serv. Comm'n*, 912 A.2d 803, 811 (Pa. 2006) ("[T]he Governor's Code of Conduct permits dismissal of a civil service employee only upon a . . . conviction"). That is not to say, of course, that conduct underlying an arrest that does not lead to a conviction can never be a legitimate basis for dismissal, only that the Governor's Code of Conduct does not provide a basis for dismissal in such a case.

Here, Defendant has cited a violation of the Governor's Code of Conduct as a basis for termination. (Doc. 39 at 11). But, as outlined above, the only way the Governor's Code of Conduct can provide the basis for dismissal is if Plaintiff was convicted of a crime. There are, therefore, two problems with the Governor's Code of Conduct as a basis for dismissal. First, Plaintiff pleaded guilty pursuant to 35 P.S. § 780-117, commonly known as "probation without verdict." (*Id.* at 46). Under § 780-117(3), after pleading guilty, and "[u]pon fulfillment of the terms and conditions of probation, the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal shall be without adjudication of guilt *and shall not constitute a conviction for any purpose whatever.*" (Emphasis added). Thus, pursuant to how Plaintiff pleaded guilty, assuming he completed probation without issue, he does not have a conviction. Second, Plaintiff was dismissed on May 27, 2011, while he did not plead guilty until October 12, 2011. (Doc. 38-3 at 46, 54). Thus, his conviction—if he does in fact have one—could not have been a basis for dismissal.

For both of these reasons, a reasonable jury could conclude that this proffered reason is either a pretext or merely duplicative of another of Defendant's proffered reasons, namely that Plaintiff's behavior underlying the criminal charges—possessing marijuana and drug paraphernalia—formed the basis of his dismissal.

Turning to the third proffered reason—that Plaintiff had a gun and ammunition on state property in violation of the DOC Code of Ethics—Plaintiff again points to employee Rathburn, who engaged in similar misconduct and may not have been terminated.[9] (Doc. 42 at 18).

"A violation of company policy can constitute a pretext for unlawful discrimination if others similarly situated also violated the policy with no adverse consequence." *Goosby*, 228 F.3d at 322. The similarities and the disparate treatment of Plaintiff and Rathburn are discussed above. Based on the above discussion, a genuine dispute exists as to whether Rathburn, a white employee, was treated more favorably when violating the same policy and thus whether this proffered reason is a pretext for discrimination. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008) ("[T]he *prima facie* case and pretext

---

[9] Defendant counters that Rathburn's misconduct was distinct from Plaintiff's because Rathburn's case did not involve drugs. (Doc. 39 at 9, 14). The Court reads this argument to mean, in essence, that while the violation of the DOC weapons policy alone may not have been the basis for the termination, the violation of the weapons policy in conjunction with the violation of the drug policy led to the dismissal. Thus, if Rathburn had also violated the drug policy, he may have been dismissed as well, and, ultimately, the two cases are not comparable. There is certainly an argument to be made that even if each of the proffered reasons are subject to attack as pretexts for discrimination *individually*, the combination of all the proffered reason provides a sound, legitimate basis for termination. The Court, however, finds the opposite argument to be at least as persuasive: if there are genuine issues as to material facts regarding each individual proffered reason, there is a genuine issue as to a material fact as to whether the combination of reasons is also a pretext.

inquiries often overlap. As our jurisprudence recognizes, evidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other.").

Plaintiff attacks Defendant's final proffered reason—that Plaintiff possessed marijuana and drug paraphernalia in his car in violation of the DOC Code of Ethics—on the basis that Defendant failed to credibly establish that the substance in his car was, in fact, marijuana. (Doc. 42 at 11). This, however, disputes an irrelevant point. From the record, there is no indication that those responsible for the employment decision believed that the substance was anything but marijuana. Even if this belief was incorrect, and Plaintiff had no marijuana, it does not follow that this proffered reason for dismissal is a pretext.

Plaintiff goes on to argue that Defendant failed to follow its own procedures in dismissing Plaintiff. (Doc. 42 at 18-19). Indeed, there is some evidence in the record to support this contention. The DOC has a discipline program that contains five levels of discipline. (Doc 44 at 147-50). It seems that in order to terminate an employee, a Pre-Disciplinary Conference needs to be held. (*Id.*). Before such a conference is held, however, a "fact finding" may be conducted. DOC policy dictates that the fact finder must be a staff member who was not involved in the incident being investigated. (*Id.* at 271-72). Here, however, Superintendent Walsh assigned a witness to the events, Lieutenant Martian, as the fact finder. (*Id.*). Lieutenant Martin, in turn, recommended a Pre-Disciplinary Conference be held. (*Id.* at 144).

It is unimportant, however, to explore whether this argument supports a finding of pretext as to Defendant's fourth proffered rational for termination. Although a plaintiff must cast sufficient doubt upon each of the legitimate reasons proffered, it does not mean that he or she

> must cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.

*Fuentes*, 32 F.3d at 764 n.7; *see also Tomasso v. Boeing Co.*, 445 F.3d 702, 710 (3d Cir. 2006). Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has cast sufficient doubt on enough of Defendant's proffered legitimate reasons as to call into question Defendant's credibility as to its remaining justification.

In sum, Plaintiff has sustained his burden by casting sufficient doubt on Defendant's proffered legitimate reasons in such a way that a jury could reasonably conclude that all of Defendant's legitimate reasons for terminating Plaintiff's employment were fabrications.

## V. CONCLUSION

For the reasons stated above, a genuine issue of material fact exists as to whether Plaintiff was terminated on the basis of his race in violation of Title VII of the Civil Rights Act.

Thus, the Court will deny Defendant's Motion for Summary Judgment, (Doc. 33). A separate Order follows.

Robert D. Mariani
United States District Judge