THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICARDO JACKSON,

    Plaintiff,

v.

COMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT
OF CORRECTIONS,

    Defendant.

3:13-CV-2747
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On April 12, 2017, following a two day trial, a jury returned a verdict finding that Plaintiff, Ricardo Jackson, had proven that his race was a determinative factor in Defendant's, the Pennsylvania Department of Corrections, decision to terminate Plaintiff from his position as a corrections officer. As this constituted a violation of Title VII of the Civil Rights Act of 1964, the jury awarded Plaintiff $62,000 in compensatory damages. In accordance with applicable law, the issues of back pay, front pay, and reinstatement were reserved for the Court's determination. *See, e.g., Donlin v. Philips Lighting N. Am. Corp.* 581 F.3d 73, 78 n.1 (3d Cir. 2009). Plaintiff now moves for this Court to award back pay and prejudgment interest. (Doc. 82). Defendant opposes the method Plaintiff used to calculate back pay. (Doc. 88). For the reasons that follow, the Court will award Plaintiff $147,326.21 in back pay and prejudgment interest.

## II. FINDINGS OF FACTS

1. On April 12, 2017, a jury found that Plaintiff proved by a preponderance of the evidence that his race was a determinative factor in Defendant's decision to terminate Plaintiff from his position as a corrections officer. (Doc 74).

2. The last day Plaintiff was paid for working as a corrections officer by Defendant was January 4, 2011. (Exs. 6, 12, 23).

3. At the time Plaintiff was terminated from his employment as a corrections officer, he was earning $35,000.00 per year. (Jackson Test., April 11, 2017, Doc. 90 at 8-9).

4. Plaintiff has requested back pay from January 5, 2011, to March 15, 2015. (Doc. 83 at 1).

5. If Plaintiff had not been terminated, Plaintiff would have earned $146,650.00 as a corrections officer between January 5, 2011, and March 15, 2015. ($35,000.00 per year x 4.19 years[1] = $146,650.00).

6. Plaintiff testified that between January 5, 2011, and March 15, 2015, he held three jobs: working for a family business, waiting tables at Cooper's restaurant, and cooking at Meshoppen Diner. (Jackson Test., April 11, 2017, Doc. 90 at 9).

7. Plaintiff testified that he worked at his family business for two years earning $400.00 per month. (*Id.*).

---

[1] There were 1,530 days between January 5, 2011, and March 15, 2015, or 4.19 years. (1,530 days ÷ 365 days per year = 4.19 years).

2

8. Plaintiff earned $9,600 while working at the family business. ($400.00 per month x 12 months per year x 2 years = $9,600.00).

9. Plaintiff testified that he worked as a waiter at Cooper's restaurant for three to four months. (Jackson Test., April 11, 2017, Doc. 90 at 9-10). Plaintiff testified that he earned $1.82 per hour at Cooper's, worked three to four days a week, and earned $15.00 to $25.00 in tips per night. (*Id.* at 10).

10. Plaintiff earned $1,833.75 while working at Cooper's restaurant. (($1.82 per hour x 8 hours per day x 3.5 days per week x 15.16 weeks[2]) + ($20.00 per day x 3.5 days x 15.16 weeks) = $1,833.75).

11. Plaintiff testified that he worked from May to August at Meshoppen Diner. (Jackson Test., April 11, 2017, Doc. 90 at 10). Plaintiff testified that he worked forty hours per week at that job and earned $10.00 per hour. (*Id.*).

12. Plaintiff earned $6,928.00 while working at Meshoppen Diner. ($10.00 per hour x 40 hours per week x 17.32 weeks[3] = $6,928.00).

13. Between January 5, 2011, and March 15, 2015, Plaintiff earned a total of $18,361.75 from other employment. ($9,600.00 at the family business + $1,833.75 at Cooper's restaurant + $6,928.00 at Meshoppen Diner = $18,361.75).

---

[2] Plaintiff testified to working three or four months. There are 4.33 weeks per month (52 weeks per year ÷ 12 months = 4.33 weeks per month), which means that there are 15.16 weeks in 3.5 months (4.33 weeks per month x 3.5 months = 15.16 weeks).

[3] This number captures the number of weeks in four months. (4.33 weeks per month x 4 months = 17.32 weeks).

14. Between January 5, 2011, and March 15, 2015, Plaintiff earned an average of $4,382.28 per year from other employment.[4] ($18,361.75 ÷ 4.19 years = $4,382.28 per year).

15. Plaintiff's total lost wages from his position as a corrections officer minus the wages he earned elsewhere is $128,288.25. ($146,650.00 − $18,361.75 = $128,288.25).

16. Plaintiff testified that he looked for work comparable to being a corrections officer between January 5, 2011, and March 15, 2015, but was unable to obtain any such employment. (Jackson Test., April 11, 2017, Doc. 90 at 10-11).

### III. CONCLUSIONS OF LAW

1. Plaintiff is entitled to back pay and prejudgment interest.

2. Defendant failed to meet its burden to show that Plaintiff did not mitigate his damages.

### IV. ANALYSIS

At the outset, the Court's role is limited because Plaintiff explicitly does not seek front pay or reinstatement and only seeks back pay from January 5, 2011 to March 12, 2015. (Doc. 82 at 2, 4). Thus, the Court's analysis is limited to assessing what, if any, back pay

---

[4] There was no evidence presented at trial with respect to when Plaintiff held any of these jobs, except for the fact that he held them between January 5, 2011, and March 15, 2015. Thus, the Court will assume that the money Plaintiff earned in these positions was earned evenly across that time frame for purposes of accurately calculating prejudgment interest and avoiding an award of interest that would be incorrectly premised on the entire amount of back pay being owed to Plaintiff the first year after his termination.

Plaintiff is entitled to during this timeframe and the appropriate amount of prejudgment interest, if any, to award. The Court will address each issue in turn.

## A. Back Pay

"If a district court finds that an employer has engaged in an unlawful employment practice, Title VII authorizes, *inter alia*, a back pay award." *Booker v. Taylor Milk Co.*, 64 F.3d 860, 864 (3d Cir. 1995). "Back pay is not an automatic or mandatory remedy, but 'one which the courts "may" invoke' at their equitable discretion." *Donlin*, 581 F.3d at 84 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975)) "The backpay award authorized by § 706(g) of Title VII, as amended, 42 U.S.C. § 2000e-5(g), is a manifestation of Congress' intent to make 'persons whole for injuries suffered through past discrimination.'" *Loeffler v. Frank*, 486 U.S. 549, 588, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988) (quoting *Albemarle Paper Co.*, 422 U.S. at 421). As such, there is "a presumption in favor of a back pay award." *Booker*, 64 F.3d at 864. Thus, "given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co.*, 422 U.S. at 421.

Here, the Court finds that Plaintiff is entitled to an award of back pay. Defendant, for its part, does not argue with this conclusion. Instead, Defendant takes issue with the amount of back pay that Plaintiff has claimed. (Doc. 88 at 2). "The appropriate standard for

5

the measurement of a back pay award is to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained." *Gunby v. Penn. Elec. Co.*, 840 F.2d 1108, 1119 (3d Cir. 1988). Given this standard, and based on the testimony given at trial, the Court has calculated that Plaintiff is entitled to a back pay award of $128,288.25.[5] (*See* Findings of Fact, *supra*, ¶¶ 3-15).

Defendant, however, argues that this sum should be reduced for several reasons. First, Defendant argues that Plaintiff's back pay award must be reduced to account for the taxes Plaintiff would have paid on his earnings had he not been terminated. (Doc. 88 at 2-3). Defendant is correct in its assertion that back pay awards are taxable. *See Eshelman v. Agere Syss., Inc.*, 554 F.3d 426, 441 (3d Cir. 2009) ("The Supreme Court made clear that back pay awards under discrimination statutes are taxable."). Defendant is incorrect, however, to the extent it contends that Plaintiff's award should be reduced by the Court to account for taxes. Indeed, "back pay awards are not reducible by the federal income tax which the employee would have paid but for the discrimination." *Gallo v. John Powell Chevrolet, Inc.*, 779 F. Supp. 804, 813 (M.D. Pa. 1991); *see also Robinson v. Se. Penn. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 898 (3d Cir. 1993) (finding the district court erred by reducing a back pay award to account for taxes plaintiff would have paid). Instead,

---

[5] This sum differs slightly from the sum Plaintiff suggested in his Brief. The main differences arise from certain assumptions Plaintiff has made in his calculations that the Court finds erroneous. For example, Plaintiff assumes that there are four weeks in a month. As discussed above, in actuality the average weeks per month is closer to 4.33 weeks.

it is Plaintiff's responsibility upon receipt of the award to remit the appropriate taxes, if any, to the appropriate government entities, at the appropriate times.[6]

Next, Defendant argues that Plaintiff's back pay award should be reduced because Plaintiff has failed to appropriately mitigate his damages. Successful Title VII "[p]laintiffs have a duty to mitigate damages by seeking suitable employment." *Gallo*, 779 F. Supp. at 813. "Failure to mitigate damages does not 'wholly cut off the right to any back pay'; rather, it may 'reduce or decrease a back pay award.'" *Hemphill v. City of Wilmington*, 813 F. Supp. 2d 592, 597 (D. Del. 2011) (quoting *Booker*, 64 F.3d at 866). "Although the statutory duty to mitigate damages is placed on a Title VII plaintiff, the employer has the burden of proving a failure to mitigate." *Booker*, 64 F.3d at 864. "To meet its burden, an employer must demonstrate that 1) substantially equivalent work was available, and 2) the Title VII claimant did not exercise reasonable diligence to obtain the employment." *Id.* "Whether or not a claimant has met his duty to mitigate damages is a determination of fact." *Id.*

With respect to the first prong, "'[s]ubstantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been

---

[6] Further, "a district court may . . . award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create." *Eshelman*, 554 F.3d at 441-42. However, "there is no presumption in favor of an adjustment for negative tax consequences," *Marcus v. PQ Corp.*, 458 F. App'x 207, 214 (3d Cir. 2012), and "[e]mployees . . . bear the burden to show the extent of the injury they have suffered," *Eshelman*, 554 F.3d at 443. Given that Plaintiff has not requested that his back pay award be adjusted to account for negative tax consequences or presented any evidence on the need for additional monies for that purpose, the Court declines to adjust Plaintiff's award to account for any increased tax burden.

7

discriminatorily terminated.'" *Id.* at 866 (quoting *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990)). As to the second prong, "[t]he reasonableness of a Title VII claimant's diligence should be evaluated in light of the individual characteristics of the claimant and the job market." *Id.* at 865. "Generally, a plaintiff may satisfy the 'reasonable diligence' requirement by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment." *Id.* Additionally, while "a plaintiff's efforts need not be successful, he must exercise good faith in attempting to secure a position." *Id.*

Here, the only evidence admitted at trial as to Plaintiff's mitigations efforts was the testimony Plaintiff gave with respect to jobs he held from January 5, 2011, to March 15, 2015, and Plaintiff's testimony that he looked for work comparable to his job as a corrections officers, but was unable to find any. (*See* Findings of Fact, *supra*, ¶¶ 6, 16). Defendant did not cross-examine Plaintiff as to these matters, did not introduce any other evidence at trial of substantially equivalent work that was available, and did not introduce any evidence at trial that Plaintiff failed to act with reasonable diligence in looking for other employment. Accordingly, Defendant failed to meet its burden to prove, by a preponderance of the evidence, that Plaintiff failed to mitigate his damages.

This conclusion is supported by the Third Circuit's decision in *Robinson v. Southeastern Pennsylvania Transportation Authority, Red Arrow Division*, 982 F.2d 892 (3d Cir. 1993). In *Robinson*, the Third Circuit refused to overturn a trial court's determination

8

that the plaintiff met his burden to mitigate his damages. *Id.* at 897. In so holding, the court observed that the plaintiff, Robinson, had "submitted a list of the jobs he held after being discharged by SEPTA. SEPTA had ample opportunity to meet its burden to show that this constituted inadequate effort by Robinson to fulfill his statutory duty to mitigate. SEPTA failed to cross-examine him as to the nature of his search elsewhere." *Id.* The facts of the case at hand are indistinguishable. Plaintiff testified with respect to his mitigation efforts and Defendant failed to cross-examine him or offer any contradicting evidence.

Notwithstanding, Defendant implores this Court to reject Plaintiff's testimony. (Doc. 88 at 5). Defendant largely bases this argument on its contention that Plaintiff's testimony is inherently unbelievable. For example, Defendant notes that Plaintiff testified that he earned $400 a month while working at the family business, a dollar store, for two years. (Doc. 88 at 6). Given that federal minimum wage at the time was $7.25, Defendant calculates that Plaintiff must have worked less than fourteen hours per week. (*Id.*). Thus, Defendant argues, it is unbelievable that Plaintiff would only be able to work fourteen hours a week at a family business, and, consequently, the lack of full time employment must have been a product of Plaintiff's choice. (*Id.*).

The Court finds this argument—and the other derivative arguments Defendant makes in this vain—unpersuasive. Defendant bore the burden of establishing that Plaintiff did not properly mitigate his damages. Defendant had ample opportunity to question Plaintiff about his mitigation efforts, but instead opted to leave Plaintiff's testimony on this

9

topic uncontroverted at trial. There was simply no evidence presented at trial to contradict the testimony Plaintiff gave on his mitigation efforts, and the Court sees no reason not to credit that testimony. Nevertheless, even if the Court were to accept these arguments, Defendant would still fail to meet its burden to show that substantially equivalent work to that of a corrections officer was available to Plaintiff.

Lastly, Defendant argues that Plaintiff is only entitled to one month of back pay. Defendant's argument proceeds as follows: after the point that Plaintiff was charged with a misdemeanor for possession of marijuana, he was no longer eligible for any comparable employment, and therefore he can only be awarded back pay for the period of time prior to the criminal charge being filed. (Doc. 88 at 5-6, 8). To support its argument, Defendant relies on two pieces of evidence: (1) Plaintiff's criminal charge, (Doc. 88-2), and (2) a letter Plaintiff received from FedEx stating that FedEx would not offer Plaintiff employment and that its decision was based, in part, on a background check it performed, (Doc. 88-1 at 7). Assuming that it is proper for the Court to consider these pieces of evidence, which were not offered at trial, the Court is unpersuaded by Defendant's argument.

Defendant, in essence, is arguing that Plaintiff, through his own actions, foreclosed all substantially equivalent work, and, therefore, Defendant is not liable for back pay for the period of time after the job-foreclosing event occurred. Defendant, however, has cited no case law for its proposition that this is a basis to bar or substantially reduce an award of back pay. Nevertheless, assuming that this is a basis on which the Court could properly

reduce Plaintiff's back pay award, such action would not be warranted in this case. First, it is not clear that the reason FedEx did not hire Plaintiff was because he was charged with a misdemeanor. The letter simply states that FedEx's "decision was *influenced* in part by information contained" in a background check. (*Id.*) (emphasis added). Second, even assuming that FedEx did not hire Plaintiff based on the misdemeanor charge, it does not follow that no other substantially equivalent employer would have hired Plaintiff.[7] Thus, the Court cannot conclude, based on the evidence before it, that Plaintiff is ineligible for all substantially equivalent work.

In sum, the Court finds that Defendant failed to meet its burden to show that Plaintiff did not properly mitigate his damages. As a result, the Court will award back pay in the amount calculated above.

## B. Prejudgment Interest

"[P]rejudgment interest reimburses the claimant for the loss of the use of his or her investment or funds from the time of the loss until judgment." *Kraemer v. Franklin & Marshall Coll.*, 941 F. Supp. 479, 487 (E.D. Pa. 1996). "Title VII authorizes prejudgment interest as part of the back pay remedy in actions against private employers." *Booker*, 64

---

[7] Nor does this evidence suggest, as Defendant maintains, that Plaintiff failed to mitigate his damages. As discussed above, to meet its burden, Defendant must demonstrate that (1) substantially equivalent work was available, and (2) Plaintiff did not exercise reasonable diligence to obtain the employment. *Booker*, 64 F.3d at 864. First, Defendant has presented no evidence that the job Plaintiff applied for at FedEx was substantially equivalent to Plaintiff's job as a corrections officer. Second, Defendant has failed to show that Plaintiff did not act with reasonable diligence to obtain employment. Although the FedEx positon was the only job for which Plaintiff produced application documentation, there was testimony at trial that Plaintiff applied for, and worked at, several other jobs after his termination.

11

F.3d at 868. Prejudgment interest is similarly available against public employers. *See Hemphill*, 813 F. Supp. 2d at 600 (awarding prejudgment interest assessed against the City of Wilmington, Delaware); *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 434-35 (D.C. Cir. 2000) (finding "no bar to awarding pre-judgment interest on back pay assessed against a state under Title VII"). "The decision to award prejudgment interest and the amount of interest awarded are within the trial court's discretion." *Kraemer*, 941 F. Supp. at 487. However, there is "a strong presumption in favor of awarding prejudgment interest, except where the award would result in 'unusual inequities.'" *Booker*, 64 F.3d at 868 (quoting *Green v. USX Corp.*, 843 F.2d 1511, 1530 n.16 (3d Cir. 1988)).

Plaintiff has requested that this Court award prejudgment interest and suggested using the IRS overpayment rate of 3% to calculate the interest. (Doc. 83 at 4). *See Johnson v. Dependability Co.*, 2016 WL 852038, at *3 (E.D. Pa. 2016) ("Federal courts typically use the IRS overpayment rate, which is 3%, or the one-year T-bill rate, which varies over time."). Defendant does not object to awarding prejudgment interest or to the interest rate that Plaintiff has suggested. (Doc. 88 at 9). Thus, the Court will award prejudgment interest and will use the rate of 3% per annum as Plaintiff has requested.

Nonetheless, the Court will not use the method of calculation Plaintiff has suggested. Plaintiff has suggested using the following formula:

*Total Back Pay Award x 3% Interest x 6.28 years*

This formula, however, over-calculates the interest for which Plaintiff is entitled to during the first few years. For example, for the period between January 5, 2011, and January 4, 2012, the first year after Plaintiff's termination, Plaintiff's formula awards him 3% interest on his full back pay award. This works out to $3,848.65 in interest. ($128,288.25 x 3% = $3,848.65). Plaintiff, however, was not deprived of $128,288.25 during that first year. But for the discrimination, Plaintiff would have earned an additional $30,617.72 between January 5, 2011, and January 4, 2012—$35,000.00 in lost wages from the corrections officer position minus $4,382.28 in wages Plaintiff earned elsewhere during that year. Accordingly, for that first year, Plaintiff is only entitled to interest on the earnings he was deprived of during that year. Three percent interest on those earnings would amount to $918.53. ($30,617.72 x 3% = $918.53).

For the period between January 5, 2012, and January 4, 2013, the second year after Plaintiff's termination, Plaintiff is again entitled to interest on the earnings he was deprived of during that year, but also entitled to interest on the earnings he was deprived of in prior years. Thus, in year two, Plaintiff is entitled to interest on $62,153.97—$30,617.72 for lost earnings in year one, $918.53 for accrued interest from year one, and $30,617.72 for lost earnings in year two. Thus, Plaintiff is entitled to $1,864.62 in prejudgment interest for year two. ($62,153.97 x 3% = $1,864.62). The subsequent years proceed in a similar fashion.

Accordingly, in line with the principals outlined above, the Court will use the following method to calculate the prejudgment interest for each year prior to judgment:

*Last Year's Total Lost Earnings and Prior Compounded Interest + Last Year's Accrued Interest + Present Year's Lost Earnings = Present Year's Total Lost Earnings and Compounded Interest x 3% Interest = Present Year's Prejudgment Interest*

Using this formula, which compounds interest annually, the Court has calculated the appropriate prejudgment interest to be $19,037.96, as shown in the appendix to this Opinion.

## V. CONCLUSION

For the forgoing reasons, the Court will award Plaintiff $128,288.25 in back pay and $19,037.96 in prejudgment interest for a total of $147,326.21. A separate Order follows.

Robert D. Mariani
United States District Judge

14

Appendix

| Prejudgment Interest Calculation ||
|---|---|
| **Year 1:** January 5, 2011, to January 4, 2012 | $0.00 + $0.00 + $30,617.72[8] = $30,617.72 x 3% = $918.53<br><br>*Year 1 Prejudgment Interest: $918.53* |
| **Year 2:** January 5, 2012, to January 4, 2013 | $30,617.72 + $918.53 + $30,617.72 = $62,153.97 x 3% = $1,864.62<br><br>*Year 2 Prejudgment Interest: $1,864.62* |
| **Year 3:** January 5, 2013, to January 4, 2014 | $62,153.97 + $1864.62 + $30,617.72 = $94,636.31 x 3% = $2,839.09<br><br>*Year 3 Prejudgment Interest: $2,839.09* |
| **Year 4:** January 5, 2014, to January 4, 2015 | $94,636.31 + $2,839.09 + $30,617.72 = 128,093.12 x 3% = $3,842.79<br><br>*Year 4 Prejudgment Interest: $3,842.79* |
| **Year 5:** January 5, 2015, to January 4, 2016 | $128,093.12 + $3,842.79 + $5,817.37[9] = $137,753.28 x 3% = $4,132.60<br><br>*Year 5 Prejudgment Interest: $4,132.60* |
| **Year 6:** January 5, 2016, to January 4, 2017 | $137,753.28 + $4,132.60 + $0.00 = $141,885.88 x 3% = $4,256.58<br><br>*Year 6 Prejudgment Interest: $4,256.58* |
| **Year 7:** January 5, 2017, to April 12, 2017 | $141,885.88 + $4,256.58 + $0.00 = $146,142.46 x 3% = $4,384.27 x .27[10] = $1,183.75<br><br>*Year 7 Prejudgment Interest: $1,183.75* |
| | **Total Prejudgment Interest: $19,037.96** |

---

[8] This number captures the year's lost wages from the corrections position minus wages earned elsewhere. ($35,000.00 lost wages per year – $4,382.28 wages earned elsewhere per year = $30,617.72 lost earnings per year).

[9] In Year 5, Plaintiff is only claiming back pay through March 15. This number captures the remaining lost wages minus the remaining wages earned elsewhere. ($128,288.25 total loss earnings – ($30,617.72 lost earnings per year x 4 full years of lost earnings) = $5,817.37 lost earnings between January 5, 2015, and March 15, 2015).

[10] To account for the fact that Plaintiff is only entitled to prejudgment interest until the date of judgment—April 12, 2017—the interest calculated for all of Year 7—$4,384.27—is multiplied by the proportion of the year for which prejudgment interest is being claimed. There are 97 days between January 5, 2017, and April 12, 2017, making this period roughly 27% of a full year. (97 days ÷ 365 days per year = .27). Thus, Plaintiff is only entitled to prejudgment interest for 27% of Year 7.